Thank you, Jason. Mr. Weingarten for the appellant. You reserved your two minutes of rebuttal, Mr. Weingarten. Mr. Weingarten, you can begin whenever you're ready. Pull those microphones right in towards you, Mr. Weingarten. It's not designed for humans to hear the oral arguments. Thank you. I was going to shorten it for somebody like me. You're welcome to do that, too. Or pull out the box. I wouldn't think of it as shortening it. I think of it as making it more comfortable. I appreciate that, Your Honor. Good morning, Your Honors. May it please the Court, my name is Noah Weingarten. I am counsel for the litigation administrator, the plaintiff appellant in the case. With me today is my colleague, Greg Schwade, at counsel's table. We represent the litigation administrator of the estate of Decor Holdings. The litigation administrator has been charged with prosecuting Chapter 5 avoidance actions, such as the one that's been brought in this case. In this case, the avoidance actions will likely be the only source of recovery for unsecured creditors. SUMEC, the defendant in the case, is a large Chinese corporation. By its own words, it ranks among the top 500 global companies and has over 18,000 employees. The case starts with SUMEC filing the proof of claim, asserting an unsecured claim for $3 million. In bankruptcy, when you file a proof of claim, and if the claim is allowed, you get part of the distribution in the bankruptcy case. The trade-off for filing that proof of claim is that you are now subject to the bankruptcy court's personal... Before you jump into the merits, what about jurisdiction? Was there an appealable final judgment? So we believe that the district court's decision is appealable for two different bases, separate and independent bases. The first is we believe that it was final under the collateral order doctrine. The decision on service of process constituted a final and conclusive decision that was separate and wholly different from the merits of... Why would that be unrevealable on appeal from a final judgment? I can think of no scenario where you would not, after the case was done, be able to have us review that if you had some... So if you go back down and you're unable to serve them under these other mechanisms and the court dismisses the case with prejudice, you can come back up and say the district court was wrong, we had properly served, the default judgment shouldn't have been vacated, right? Even if you went on the merits, then we never see you again. You served effectively under these alternative ways, we never see you again, that's fine, no offense. And then let's say you serve, you lose on the merits, you could still even under that scenario say we were prejudiced by the delay and the default and we properly served. So there's no scenario under which we would not be able to review this decision at the appropriate time or am I missing something? The issue for us, your honor, is that if the district court's decision is allowed to stand and the case is remanded, it will mean that service of process in the first instance was invalid and we'll have to re-serve SUMEC. Alright, so that happens all the time, right? The issue is that for us, that is going to be nearly impossible because of the parade of horribles that we'll run into. Well if you can't do it under the treaty there are alternative mechanisms, the district court can allow you to do it by email, you now have a designated agent in the United States who's a lawyer in this case maybe the district court said you could serve it on the lawyer, there are cases Judge Furman has a case where he decided exactly that, so I understand your concerns about being able to serve under the treaty, but that's not the end of the road either, right? The Judge Furman case that I believe you're referring to, and I could be wrong, it did not deal with a party that claimed to be an agent or an arm of government. I don't want to suggest that we know exactly how it'll play out I'm just suggesting if there's a lot of unresolved avenues and I know it will cost your client more money but that's not under the collateral order doctrine, we said the opposite the fact that there will be additional expenses is not enough and that's really what you're arguing here, that it'll cost money, right? Well that's part of it, your honor. Part of it is that we will not be able to go, and your point about alternative service is well taken. The court theoretically could order alternative service, I don't know if that's available under the FSIA because SUMIC claims to be an arm of the government. If you can't serve them, then if the case is dismissed with prejudice you've got to find an order and you're back on track. I'm sorry, I didn't hear the first part. Well, if you're unable to serve and somehow you're not able to process the claim, you seek a dismissal with prejudice. That's what's happened in a number of cases and then you're back on track to litigate this. If I can't serve them, I can't seek a dismissal. I wouldn't seek a dismissal in my own case. No, the court would dismiss with prejudice if you don't do proper service. The court gives you another chance to do it under the treaty. You can't do it. There's no alternative mechanisms, although I think there might be. You would eventually get a dismissal with prejudice. In fact, if your client didn't want to spend the money, you could go back down and remand and say, we declined to serve under all these grounds. We want a dismissal with prejudice. We think you're wrong. We want you to dismiss with prejudice. We're going to put all our apples in this basket. I think you could probably do that too, right? If you thought this was all futile, there was no chance. There's not going to be able to do it by email. You're not going to be able to serve it on the agent. This is going to be the only chance we have to do this. We don't want to spend the money trying these other ways. District court or bankruptcy court, we decline these other avenues of service. Enter a final dismissal with prejudice. Could you do that? I did not think about not serving them, but I don't disagree, Your Honor. Were there mechanisms for certifying an appeal in these circumstances? Yes, Your Honor. Did you take advantage of any of those options? I'm sorry, what was the last part? You did not take advantage of those options which would have committed an interlocutory appeal. That is correct, Your Honor. I think five circuits have held that vacating a default judgment is not a final appealable order. That is correct, Your Honor. Are they all wrong? No, I wouldn't be that presumptuous to say that, but I would say that there's a second and alternative basis for finding that the district court's decision is appealable to this court, and that's under this court's precedent in Stone v. Williams, which found that a decision that has a remanagement... And it's a race judicata case, right? Correct. The language you're relying on is dicta at best? It might be dicta, but it's certainly persuasive argument here. I know, but also the circumstances there the only thing left was enforcement of the relief. There was a holding. That was fine. It was just how the relief would be enforced. Here, we're at the beginning of the case. A vacating of a default is the earliest part of a case. Just to follow up on Judge Chin's question, do we need the first court in the history of the United States to say that a vacating of a default judgment can be a final order under the collateral order doctrine? We'd be the first court ever to say that. So that's why I think that it's important to also look at the race judicata point, because courts including the Supreme Court have found that a decision containing a remand instruction, they can decide things that are final and won't be litigated further on a remanded proceeding. That's exactly what's going to be the case here. The service of process point, that's done. It's finished. We're not going to litigate it further. And so there's nothing to add to it. I don't want to spend five minutes talking about how it's not finished. It's not finished. Well, the case isn't finished. No, the service of process issue isn't finished because there's all these other open questions about other possibilities. That is true, Your Honor. I see I've run out of time. And so I'm happy to stop or take further questions. If there are no further questions, you have two minutes to rebuttal. Thanks. Thank you. All right, Mr. Rosenberg. Yes, thank you, Your Honor. I assume you can hear me correctly. There's no quiet way to move it. Don't worry about it, Mr. Rosenberg. They were supplied by the lowest responsible bidder. Go ahead. Thank you, Your Honors. And may it please the Court, my name is Frederick Rosner. I represent the Appellee Sumac Textile. The issue on appeal is whether appellant's service of an adversary complaint on Brown and Joseph, which I might refer to as B&J, which is a debt collection agency based in Illinois, is effective service against Sumac, a Chinese company with no operations, no offices, and no registered agent in the United States. The District Court correctly found that service was defective and vacated the default judgment entered by the Bankruptcy Court. So who filed the proof of claim? Okay. The proof of claim was filled out by a gentleman named Don Leviton. He's with B&J? He has his own law practice and he is General Counsel to B&J. In Mr. Yonggu's declaration, who's a senior personnel at Sumac, we expressly claim that we had any involvement with filing the proof of claim, authorizing it. The gentleman filed the proof of claim in Sumac's name? He filled it out that way. But Sumac never authorized him to do it. Is that what you're saying? Yes, we are saying that. Plus, if you look at the proof of claim, Mr. Leviton's sole authority to fill out the claim came from Sinoshare. Sinoshare was the insurer. This is an insured, which is Sumac. Since you started in the marriage, but he also filed with it the trust document, didn't he, where your client specifically authorized Sinoshare to operate in your client's name? No. Sinoshare, that's a translated document from Chinese. That is a subrogation agreement. No, a subrogation agreement comes after. At the time of the filing of the notice of claim, there was a document filed in which Sumac had specifically authorized Sinoshare to operate in its name. Correct? Am I correct? Not those words. And here's what's happening. Was Sinoshare authorized to act as an agent for Sumac? No. If you're wrong about that. Let me finish. You didn't want to talk about finality, which if you can count, seems like a winner to me. But in any event, if you want to talk about merits, we'll talk about merits with you. If Sumac appoints Sinoshare as its agent to pursue this debt, don't shake your head. I disagree. Go ahead and give me your argument. You don't want to answer my question. Just go ahead and give me your argument. I will answer your question. No, go ahead. I'm not interested in questioning it. Sumac sold goods to Decor. It had the benefit of export credit trade insurance. If Decor did not pay my client, my client could turn to its insurer, Sinoshare, to get insurance proceeds. So when Decor didn't pay, they put a claim in for that money. What happened in the case is the bar date in the bankruptcy occurred before they could settle up on the insurance. It's just a temporal issue. It doesn't affect anything. When Sumac was executing that agreement, it was subrogating its claim to Sinoshare as insurer to now take that debt and try to mitigate its exposure. Did the subrogation occur after the proof of claim had been filed? The subrogation papers were executed earlier because of the bar date. It settled up later, but they had to do that because otherwise Sinoshare would not have been able to try to mitigate its claim that it subrogated to from the insurer. So it's just a temporal issue. And I will say that the proper method of- The subrogation law, once the insurer pays, they stand in the shoes of the subrogate, right? Yes. So Sinoshare stood in Sumac's shoes. Whatever rights Sumac had vis-a-vis Decor Holdings, or whatever the name of the debtor is, the insurer, once it realized that the bankrupt didn't pay, stood in the shoes of Sumac to pursue it, correct? Correct, but not for Sumac. And did not one of the documents that Sumac signed in connection with this transaction say, authorize Sinoshare to operate in its name? Yes. Yes. Because it was going to- So it seems to me that perhaps Sumac could reasonably understand that its subrogate, who had paid the claim, might pursue a claim in the name of Sumac, in the jurisdiction, or in the form in which that claim would be litigated, i.e., the bankruptcy claim. The representative from Sumac expressly denies that. Expressly, but it entered into the situation. Implied agency comes from representations by the principal for which the public can generally rely. And Sumac enters into an arrangement that says, Sinoshare, you can use my name. Because that's the name the debtor would recognize on his books and records. What a big surprise when Sinoshare files a claim in the name of its insured, for whom it's paid the debt. It gets the right to use the name because when it puts its claim in for the debt, the debtor can recognize it on its books and records. That's why that is done that way. And that's what the Yon Koo Declaration says. Maybe you should talk about jurisdiction. I would have started there. Well, my next line was that the proper way- I'll be honest with you. If this were on the merits, this is a tough case for you, in my opinion. I don't agree, but I'll put that on the record. No, I think that there are other ways for them to affect service and they chose not to pursue them. And I think that when it comes to- Are you going to argue that they have to do it under the treaty? Yeah, they would have to pursue. And then what happens if they cannot do that because China will not cooperate? I don't know whether China will or will not cooperate. Let's assume they don't. They say, based upon history, they're not going to. Well, I think the first part of the transcript will give them some guidance about- But would you agree then that the district court, the bankruptcy court, could authorize alternative forms of service under the rule? Yes, the bankruptcy court could do that. And we reserve all rights. We don't agree necessarily that we're the designated agent. We're trying to say that we don't belong before the court, but that will be a dispute for another day. I would also say, since they didn't pursue the proper channel and they relied on the rule, which does allow service on foreign corporation, if cutting to the chase, it's an agent by appointment. Because I can't claim that Brown and Joseph was a director or officer or decision maker for SUMAC. That's clearly not the case. And Brown and Joseph was not appointed by law. It's by the documents. The document that Brown and Joseph is in privity with only Sinoshore has no privity with SUMAC. Their collection, their trustee instruction is just with Sinoshore. Sinoshore's scope of the agency is limited. One is for the amicable collection of a debt, not for receiving service or process. And as the appointing agent for service or process has to be fairly expressed like a registered agent. Whose shoes does the subrogate stand in? Whose shoes does the subrogate stand in? Subrogate just itself and that may alone, but it doesn't stand in the shoes of the insured that's paid on the debt? For purposes of collecting the debt, it stands in for itself. To mitigate what it paid at insurance. It can use the insured's name for that purpose to mitigate what it just paid out. Are defenses that are available with regard to the debt that could be raised? I'm sorry? Are defenses that are available that can be raised against the insured can they be raised against the insurer in the collection of the debt? I don't know the answer to that question, but I would assume so, yes. They stand together. It's subrogation. Go ahead. So I would say the orders issued are not final and the court lacks jurisdiction. And with that I think I will conclude. Thank you very much. And Mr. Weingarten, you have two minutes in rebuttal. Thank you, Your Honors. I'm not going to beat a dead horse on jurisdiction or argue the merits because clearly jurisdiction is the threshold issue. And so the only point I wish to add in my time is that this court, as the Supreme Court has said in Cohen, is that courts apply a pragmatic approach when viewing the collateral order doctrine. And in this case the district court has locked up 100% of the judgment that we obtained in the district court's registry. So if we were to, if the case were to be remanded, we'd have to go back, the money would likely be unlocked, and we'd have to start over again. I'd like to request that the money continue to be locked while you pursue these alternative avenues. You could ask the district court or the bankruptcy court to do that, right? We could do that. At this point, though, I have no idea how the district court would shake on it. And if the money were released, then we'd have to go to China, theoretically, to pursue a judgment. And I just wanted to point the court, actually, to a case that Sumac cited in its opposition papers at page 10. It's the In Re Wills Lines case. That has some language in there that's actually very interesting, and it supports our position with regard to the money. It cites to Cohen the seminal collateral order case and the Wills case is a Second Circuit case from 1955. That case said that appellate in the case of an order vacating an attachment, it was a maritime case, appellate review of an order dissolving attachment at a later date would be an empty right after the vessel had been released and the restoration of the attachment only theoretically possible. And there, that's exactly the case here. If the money were released and Sumac could take it back to China, it's almost certain that this estate would be unable to recover that money unless the district court did, as you said, Judge Bianco, which is to hold onto the money. I assume you'll make that motion right away. Thank you, Your Honor. Thank you both. We'll reserve the decision and have a good day.